IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

02 JAN 25 PM 1:50

| | |
|---|---|
| NISH | ) |
| | ) |
| and | ) |
| | ) |
| RCI, Inc. | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   No. CIV 01-1075WPJ |
| | ) |
| THE HONORABLE DONALD H. RUMSFELD | ) |
| Secretary of Defense | ) |
| | ) |
| and | ) |
| | ) |
| THE HONORABLE JAMES G. ROCHE | ) |
| Secretary of the Air Force | ) |
| | ) |
|     Defendants. | ) |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

### I. Findings of Fact

1.    Plaintiffs seek a declaratory judgment and injunction barring the government's application of a blind vendor priority to a procurement contract to operate mess halls at Kirtland Air Force Base, New Mexico. Since 1990, the Kirtland AFB food services requirement has been on the Procurement List under the authority of the Javits-Wagner-O'Day Act (JWOD), 41 U.S.C. §§ 46-48c. That Act requires federal agencies to procure commodities and services from qualified nonprofit agencies under the JWOD program. Plaintiff RCI, Inc. is the nonprofit agency designated to provide those services at the Kirtland AFB mess hall. The matter is before the Court on cross motions for summary judgment.



2.      Plaintiff NISH (formerly known as National Industries for the Severely Handicapped, Inc.) is a nonprofit organization incorporated in the District of Columbia with its principal place of business in Vienna, Virginia. RCI's principal place of business is in Albuquerque, New Mexico.

3.      Defendants are Donald H. Rumsfeld, Secretary of Defense and James G. Roche, Secretary of the Air Force.

4.      Intervenors are Robert E. Vick, Jr. and the New Mexico Commission for the Blind.

5.      Use of the JWOD Procurement List is mandatory on all federal agencies. *See* 41 U.S.C. §§ 47(a), 48; 48 CFR §§ 8.704(b) and 8.705-1(a). Nevertheless, on August 17, 2001, the Air Force solicited a proposal for Kirtland AFB food services from the New Mexico Commission for the Blind under the Randolph-Sheppard Act, 20 U.S.C. §§ 107 et seq. ("Randolph-Sheppard"). Randolph-Sheppard gives priority to blind vendors to operate vending concessions on federal property. The Act authorizes the Secretary of Education to regulate "vending facilities," defined to include "cafeterias."

6.      The Department of Education (DOE), the federal agency charged with implementation of Randolph-Sheppard, has asserted authority to impose the Act's blind vendor priority on defense procurement contracts for mess hall services. In 1998, the General Counsel of the Department of Defense ("DOD") deferred to DOE's position that mess halls are "cafeterias" within the meaning of Randolph-Sheppard. Complaint, Exhibit 12. Plaintiffs challenge the validity of DOE and parallel DOD "cafeteria" regulations as applied to procurement contracts for mess hall services. *See* 34 CFR Part 395 (DOE) and 32 CFR Part 260

(DOD). These "cafeteria" regulations are not part of the Federal Acquisition Regulation (FAR), which, by statute, is the "single Government-wide procurement regulation." 41 U.S.C. § 405(a).

7. The JWOD Act established a Presidentially-appointed Committee for Purchase From People Who Are Blind or Severely Disabled ("the Committee") to maintain the Procurement List. The Air Force's Associate Deputy Assistant Secretary (Contracting) is a voting member of the Committee. *See* Plaintiffs' Reply to Defendants' and Intervenors' Cross Motions and Oppositions to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Reply") at 4, Exhibit 23. The Committee (a) decides which items will be added to the Procurement List, (b) sets a fair price for the agencies to pay, and (c) must approve any additions to, deletions from, and procurement exceptions to the List. *See* 41 U.S.C. § 47(a); 41 CFR § 51-2.8(d); 48 CFR Part 8.7. The Air Force has not requested that the Committee delete Kirtland AFB food services from the Procurement List, nor grant a procurement exception, and the Committee has stated that it "would not approve any such requests." Complaint, Exh. 17.

8. The Federal Acquisition Regulation states: "No other provision of the FAR shall be construed as permitting an exception to the mandatory purchase of items on the Procurement List." 48 CFR § 8.704(b). The Air Force has no authority to remove the Kirtland food services requirement from the Procurement List, nor to approve a procurement exception, nor to override the statutory mandate for purchase of services on the Procurement List.

9. RCI is a Community Rehabilitation Program that provides job opportunities for persons with disabilities as a qualified nonprofit agency under the JWOD program. NISH, a government-designated Central Nonprofit Agency under JWOD, assists local nonprofit agencies such as RCI in creating employment opportunities for persons with severe disabilities, including blind persons. *See* 48 CFR § 8.701.

10.     The Competition in Contracting Act (CICA) requires express statutory authorization for federal agencies to spend tax dollars on contracts for government acquisition of goods and services without competition. *See* 10 U.S.C. §§ 2202, 2304(a)(1). In relevant part, Section 2304(a)(1) states

> … except in the case of procurement procedures otherwise expressly authorized by statute, the head of an agency in conducting a procurement for property or services –
>
> (A) shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the Federal Acquisition Regulation; ….

The JWOD Act provides an exception to CICA's full and open competition requirements by authorizing that acquisitions be made from a specified source: "Qualified Nonprofit Agencies for the Blind or Severely Handicapped." 10 U.S.C. § 2304(c)(5), 2304(f)(2)(D); 48 CFR § 6.302-5(b)(2); 48 CFR Part 8.7.

11.     Randolph-Sheppard grants priority to blind persons in the operation of self-sustaining vending concessions that make private sales to individual customers on federal property. In Randolph-Sheppard, Congress delegated authority to the DOE, through the Commissioner of the Rehabilitation Services Administration, to regulate the operation of "vending facilities" on federal property, and to afford priority in the operation of those vending facilities to blind persons licensed by State agencies. *See* 20 U.S.C. § 107(b), 107d-3(e). In 1974 amendments, Congress expanded the Act's coverage from "vending stands" to a wider variety of concessions.

12.     The 1974 amendments contain two references to "cafeterias." First, Congress included "cafeterias" in the definition of "vending facilities" to recognize the capability of blind persons to operate cafeterias that sell food for the benefit of employees and visitors in federal

buildings. *See* 20 U.S.C. § 107a(a)(5). Second, Congress authorized DOE to prescribe

regulations for operation of cafeterias on federal property "by blind licensees" upon

determination that the blind licensee can provide food at reasonable cost and with high quality

comparable to that currently provided federal employees in concession cafeterias they patronize.

20 U.S.C. § 107d-3(e). DOE regulations provide that the appropriate state licensing agency shall

be invited to respond on behalf of the blind vendor to solicitations for offers to operate

concession-basis cafeteria contracts. *See* 34 C.F.R. § 395.33(b).

13. It is undisputed that vending concession contracts and defense procurement

contracts are mutually exclusive and not interchangeable. Concession contracts involve private

sales to individuals using their own money to satisfy discretionary needs. Procurement contracts,

in contrast, involve government payment of tax dollars to contractors for essential goods and

services to fulfill government mission requirements. A mess hall, unlike a vending concession,

is not a public convenience. Rather, mess halls feed the troops as part of the military mission.

Military food service specialists purchase the food, plan the menus and pay the contractor to

serve the food. *See* Declaration of E. Robert Chamberlin ("Chamberlin Decln.") ¶ 13.

14. Under JWOD, local nonprofit agencies such as RCI must perform 75% of their

total direct labor with people who are blind or severely disabled. *See* 48 C.F.R. § 51-1.3. The

unemployment rate for persons with severe disabilities is about 70%. At Kirtland AFB, plaintiff

RCI provides employment to 31 such persons. Food service contracts in military mess halls

nationwide under JWOD provide employment to approximately 2,600 persons with disabilities.

The government's claimed extension of the Randolph-Sheppard blind vendor priority potentially

puts at risk all 2600 jobs for persons with disabilities and threatens any new job opportunities for

such persons in military mess halls.

5

15.     Under Randolph-Sheppard, in contrast, all benefits go to the single blind vendor and to that vendor's "consultant" company, which need not be a disadvantaged concern and which has no requirement to hire persons with disabilities. Chamberlin Decln. ¶ 7.  In this case the "consultant" is Selrico Services, Inc.  Selrico, whose primary customer is the United States government, holds defense contracts to provide food services in twelve states, Guam and Puerto Rico, with more than 700 employees nationwide.  Plaintiff's Reply, Exhibit 24; Defendants' Response at 5, ¶ 14, Defendants' Exhibit A, ¶¶ 15-17.  On its own, Selrico has no entitlement to any priority under Randolph-Sheppard.

16.     As enacted in 1936, Randolph-Sheppard contained no authority to regulate military procurement contracts.  During the hearings on the 1974 amendments to Randolph-Sheppard, the bill's sponsors and leading advocates for the blind stated the proposed legislation provided "no new expression of congressional intent" and disavowed any connection to government procurement. They urged instead that vending is "self-sustaining" and an "entirely private transaction" in which "there is no procurement by the Federal Government."  Complaint, Exhibit 3 at 79; Exhibit 5 at 96-97.  In particular, the blind vendor community was emphatic that the 1974 amendments, like the original Act, dealt only with vending concessions.[1]  The American

---

[1] The bill "provides for no radical change or modification of the existing Randolph-Sheppard program. ... The bill ... contains no new expression of Congressional intent." (Statement of Charles Hoehne, General Counsel, National Council for the State Agencies for the Blind) Plaintiffs' Mem. at 10, Hearings on S.2581 at 78-79, Plaintiffs' Exh. 3 and Exh. 11 p. 5; "The bill would change the term 'vending stand' to 'vending facility' to more accurately cover *the wide variety of concessions* operated on Federal property by blind persons.  It also defines a vending facility to include *various types of concessions*, including vending machines." (Statement of Irvin Schloss, American Federation for the Blind), Hearings on S.2506, Plaintiffs' Exh. 5 at 77 (Emphasis added); "The liberalized definition of 'vending facility' is justified by the substantial number of *successful concessions* already being operated in all kinds of such vending facilities." (Joint Statement of Randolph-Sheppard Vendors of America and American Council of the Blind), Army's Legal Analysis *quoting* Hearings on S.2461, Plaintiffs' Exh. 11 at 6 (Emphasis added); "[T]he language of this bill creating a preference under the present

Council for the Blind, opposing the incursion of the Small Business 8(a) procurement priority into the blind vendor program, stated that when a vending concession is "installed on Federal property, there is no procurement by the Federal Government." Rather, the vendor's customers "make a private purchase, not from the Government and not for the Government, but [an] entirely private transaction ... there is no Government procurement involved." Hearings on S.2506, Complaint, Exhibit 11 at 6-7.

17.    The Air Force began contracting for mess hall operations as early as 1960.[2] Thus, the practice was well-established by the time Congress considered the Randolph-Sheppard amendments. The blind vendor community had ample time to reverse their position and urge Congress to extend the Randolph-Sheppard priority to defense contracts. The bill that became the 1974 amendments worked its way through three successive sessions of Congress in substantially the same form, including expanded coverage of the Act to cafeterias and other types of vending facilities. Complaint, Exhibit 11 at 5.

---

conditions for the *operation of vending concessions* by blind persons is the *same language as in the present law.*" (Statement of Durward McDaniel, National Representative of American Council for the Blind), Army's Legal Analysis *quoting* Hearings on S.2461, Plaintiffs' Exh. 11 at 6. (Emphasis added.)

[2] *See, e.g., United States v. Pickett's Food Service,* 360 F.2d 338 (5th Cir. 1966) (food service contract at Hickam Air Force Base, Hawaii beginning July 1960); *Associated Food Service, Inc.,* ASBCA 6883, 1962 BCA ¶ 3443, 1962 WL 914 (contract for operation of two dining halls at Reese AFB, Texas beginning September 1960); *Management Services, Inc.,* ASBCA 11,190, 67-1 BCA ¶ 6103, 1967 WL 525 (contract dated February 1965 for operation of dining halls and in-flight kitchen at Mather AFB, California); *Worldwide Services, Inc.,* ASBCA 12788, 68-2 BCA ¶ 7192, 1968 WL 738 (contract for operation of consolidated dining hall beginning July 1966 at Craig AFB, Alabama); *Space Age Engineering, Inc.,* ASBCA 18600, 74-2 BCA ¶ 10,869, 1974 WL 1798 (food service operations at Kelly AFB, Texas beginning 1972); *American Maintenance and Management Services, Inc.,* ASBCA 18,756, 75-2 BCA 11,407, 1975 WL 1682 (food service operation at Moody AFB, Georgia beginning January 1972).

18.     The agency notice of proposed rulemaking on the 1974 Randolph-Sheppard amendments announced no intention to apply the "cafeteria" regulations to procurement contracts for mess hall services. *See* 40 Fed. Reg. 59408 (December 23, 1975). Complaint, Exhibit 6. After the initial round of comments, the agency added a definition of "cafeteria" only "to distinguish cafeterias *from other types of vending facilities* covered by the Act." 42 Fed. Reg. 15809. Complaint, Exhibit 7. (Emphasis added.) Neither the proposed nor the final rule stated that these "cafeteria" regulations applied to defense contracts for mess hall operations, in addition to contracts to operate concession-basis cafeterias. The current DOE regulations, which also make no such claim, are now found at 34 CFR Part 395. *See* Exhibit 2. Parallel DOD regulations are at 32 CFR Part 260. *See* Complaint, Exhibit 8. As stated above, these regulations are not part of the Federal Acquisition Regulation, the "single Government-wide procurement regulation." 41 U.S.C. § 405(a).

19.     Senate hearings in 1985, called at the instigation of the National Federation of the Blind, addressed complaints about lack of agency compliance with the Randolph-Sheppard vending priority, but there was no mention of mess halls and no suggestion of any expansion of Randolph-Sheppard from vending concessions to military procurement. Complaint, Exhibit 9. At that time, the Air Force had been contracting for food services in mess halls at least 25 years. See Finding 17, n. 2, *supra*.

20.     It was not until 1991, seventeen years after passage of the 1974 amendments, that Randolph-Sheppard advocates first attempted to subject mess halls to the vending concession priority. In a bid protest involving a mess hall contract at Keesler Air Force Base, the General Accounting Office (GAO) deferred to the views of the Department of Education, concluding that the services were within the DOE's regulatory definition of "cafeteria." GAO, however, did not

consider (a) whether Randolph-Sheppard contains a delegation of authority to DOE to regulate military procurement, nor (b) whether Randolph-Sheppard is a procurement statute that qualifies as an exception to the CICA requirement for full and open competition. *See Department of the Air Force – Reconsideration*, 72 Comp. Gen. 241, 93-1 CPD ¶ 431. Complaint, Exhibit 10.

21. In a memorandum dated August 14, 1997, Frederick K. Schroeder, Commissioner, Rehabilitation Services Administration, Department of Education, acknowledged that the authority to regulate the operation of cafeterias "appears to address only cafeterias run on a concession basis by blind vendors," but argued instead that "the Act clearly covers all types of food service operations on military bases, including military troop mess halls[.]" Complaint, Exhibit 21 at 1-2. Nevertheless, the Air Force here relies on DOE's authority to regulate "cafeterias," which Commissioner Schroeder agreed "appears to address only cafeterias run on a concession basis by blind vendors."

22. The Department of the Army, after first agreeing that Randolph-Sheppard applied to mess hall contracting, became "convinced that view was mistaken," and in May 1998 issued a detailed memorandum concluding that Randolph-Sheppard does not apply to mess hall operations, based on statutory language and legislative intent. Complaint, Exhibit 11 at 2.

23. In a November 12, 1998 memorandum, the Department of Defense General Counsel overturned the Army's position, "based on the plain meaning of the [Randolph-Sheppard] statute, Department of Education (DOE) guidance and Comptroller General opinions." The DOD General Counsel, however, did not examine the fundamental question whether Randolph-Sheppard contains an explicit grant of authority to DOE to regulate military procurement contracts in addition to vending concessions. Rather, like the opinions it relied on, the DOD General Counsel's memorandum (a) focused on the definition of "cafeteria," (b)

deferred to the views of DOE as the agency charged with the duty to administer Randolph-Sheppard, (c) did not consider whether a mess hall is a "vending facility," and (d) did not address whether Randolph-Sheppard is a procurement statute containing an express statutory exception to the full and open competition requirements of CICA. *See* Complaint, Exhibit 12.

24.     Effective February 19, 2001, the Committee for Purchase From People Who Are Blind or Severely Disabled placed the Kirtland AFB requirement for full food service on the Procurement List, an expansion of the 1990 listing as mess attendant services. The Contracting Officer awarded the full food service contract to RCI under the mandatory JWOD provisions, replacing the previous contract for mess attendant services. Complaint, Exhibits 14 and 13.

25.     In a decision rendered April 18, 2001, the United States Court of Appeals for the Fourth Circuit, deferring to the views of DOE, held that Randolph-Sheppard controlled the award of a mess hall services contract at Fort Lee, Virginia. Unlike the present case, there was no incumbent JWOD contractor in place at Fort Lee. *NISH v. Cohen*, 247 F.3d 197, 200 (4th Cir. 2001). This case, involving Kirtland AFB, is the first time the government has attempted to oust an incumbent JWOD contractor.

26.     The Air Force decided to open up the Kirtland AFB mess hall services requirement to the blind vendor priority, and RCI objected. Complaint, Exhibits 15 and 16.

27.     By letter dated August 10, 2001, the Committee requested the Air Force "continue to obtain Food Services at Kirtland AFB from RCI, Inc. and stop any further action to solicit a proposal under Randolph-Sheppard." The Committee observed: (a) only the Committee had authority to approve a deletion from or a procurement exception to the Procurement List, (b) the Committee had received no request for deletion from or procurement exception from the

Procurement List for Kirtland AFB food services, and (c) "would not approve any such requests." Complaint, Exhibit 17.

28.     On August 17, 2001, the Kirtland AFB Contracting Officer issued a solicitation for full food services in Kirtland mess halls, invoking the Randolph-Sheppard priority. The solicitation contained the following note:

> NOTE 1: IN ACCORDANCE WITH 32 CFR PART 260, *VENDING FACILITY PROGRAM FOR THE BLIND ON FEDERAL PROPERTY*, AND 34 CFR PART 395, *VENDING FACILITY PROGRAM FOR THE BLIND ON FEDERAL AND OTHER PROPERTY*, WHICH IMPLEMENT THE RANDOLPH-SHEPPARD ACT, IF THE STATE LICENSING AGENCY (SLA) SUBMITS A PROPOSAL THAT IS WITHIN THE COMPETITIVE RANGE ESTABLISHED BY THE CONTRACTING OFFICER, THE CONTRACT WILL BE AWARDED TO THE SLA. <u>ALSO NOTE</u>: THIS PROCUREMENT IS ALSO SUBJECT TO THE JAVITS-WAGNER-O'DAY (JWOD) ACT AND ITS IMPLEMENTING REGULATIONS. SEE FAR SUBPART 8.6 [SIC - 8.7] AND 41 CFR PART 51-2. THEREFORE, IF THE SLA DOES NOT SUBMIT A PROPOSAL THAT IS WITHIN THE COMPETITIVE RANGE ESTABLISHED BY THE CONTRACTING OFFICER, THE AIR FORCE WILL AWARD THE CONTRACT TO A JWOD PARTICIPATING NONPROFIT AGENCY IF ONE IS AVAILABLE WITHIN THE PERIOD REQUIRED.

Complaint, Exhibit 18 at 61.    This suit followed.

## II.  Conclusions of Law

1.     The Court has jurisdiction under 28 U.S.C. § 1331 (Federal question). The matter arises under the Competition in Contracting Act (CICA), 10 U.S.C. §§ 2301 et seq., the Office of Federal Procurement Policy (OFPP) Act, 41 U.S.C. §§ 401 et seq., the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 46-48c, the Randolph-Sheppard Act, 20 U.S.C.  §§ 107 et seq., and the Administrative Procedure Act, 5 U.S.C. § 702 et seq.

2.     Venue lies in the District of New Mexico under 28 U.S.C. § 1391(e).

3.      The remedies sought are authorized by the Administrative Procedure Act, 5 U.S.C. § 702 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.      The issue before the Court is whether the Randolph-Sheppard Act delegates authority to DOE to regulate military procurement by imposing the blind vendor priority upon the award of defense contracts for mess hall operations. The Court concludes that the Randolph-Sheppard Act applies only to vending concessions and therefore does not authorize extension of the blind vendor priority to government procurement contracts. The JWOD Act, through the mandatory Procurement List, requires the Air Force to obtain food services from RCI at Kirtland AFB.    Since the Department of Defense deferred to the Department of Education, and "DOD's role in implementation of the Randolph-Sheppard Act is primarily to follow the decisions of DOE," this Court will address the deference owed DOE. *See NISH v. Cohen*, 247 F.3d at 203, n.5.

5.      In reaching its conclusion on the limited reach of Randolph-Sheppard, the Court determines that DOE's decision is not entitled to deference. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), the Supreme Court prescribed a two-step analysis for determining whether agency action is entitled to deference. In step one, the reviewing court must inquire "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. In step two, the Court may uphold an agency's attempt to "fill in the gaps" *only* when the Court finds in step one that Congress "explicitly left a gap to fill" within "an express delegation of authority to the agency." *Chevron*, 467 U.S. at 843-44.

6.     This Court's task in applying step one of *Chevron*, then, is to determine precisely the Congressional "express delegation of authority to the agency." The Tenth Circuit has applied a rigorous *Chevron* step-one analysis.[3] In the present case, this Court's analysis begins and ends with *Chevron* step one. In Randolph-Sheppard, the express Congressional delegation of authority to DOE is to accord priority to blind vendors in award of vending concessions. Congress did not leave "a gap to fill" that would permit DOE to engraft that priority onto military procurement contracts. In *Adams Fruit Company, Inc. v. Barrett*, 494 U.S. 638, 650 (1990), the Supreme Court confirmed that only those agency determinations "within the scope of delegated authority are entitled to deference" and "an agency may not bootstrap itself into an area in which it has no jurisdiction."

7.     The government, as the proponent of the Randolph-Sheppard "cafeteria" regulations, "must show a textual commitment of authority" to DOE "and that textual commitment must be a clear one." *Whitman v. American Trucking Associations*, 531 U.S. 457, 121 S.Ct. 903, 909 (2001). The government here assumes, but does not demonstrate, an express delegation of authority to DOE to regulate the award of defense contracts. The clear expression

---

[3] *See, e.g., Lamb v. Thompson*, 2001 WL 985547 (10th Cir. Aug. 21, 2001) (no deference to Forest Service interpretation under "traditional canons of statutory interpretation"); *Sierra Club Black Hills Group v. U.S. Forest Service*, 259 F.3d 1281 (10th Cir. August 8, 2001) ("Deferring to an interpretation of a known but ambiguous mandate, however, is strikingly different than deferring to the determination of which among various statutes constitutes the mandate of Congress. We do not pay deference to an agency's interpretation of what law is applicable...."); *Qwest Corp. v. F.C.C*, 258 F.3d 1191 (10th Cir. 2001) (textual review of statute rendered agency ruling inadequate); *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001) (under "plain meaning" of statute Secretary of Interior had no discretion regarding trust lands); *Public Lands Council v. Babbit*, 167 F.3d 1287 (10th Cir. 1999) (court analysis of twenty years of statutory development); *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775 (1998) (court distinguished "proprietary institutions of higher education" from "postsecondary vocational institutions" through statutory context); *Sundance Assocs. v. Reno*, 139 F.3d 804, 810 (10th Cir. 1996) ("[T]he text and reasonable inferences from it give a clear answer against the Government.").

of statutory authority demanded by the Supreme Court's *Chevron* step-one analysis is not present.

8.      It is undisputed that vending concessions and defense procurement are mutually exclusive and not interchangeable.[4] It follows, therefore, that a statutory delegation of authority to apply the blind vendor priority to concession contracts does not encompass authority to impose the same priority on procurement contracts. DOE's argument that it has authority to regulate military procurement contracts, based on the suggestion that mess halls are "cafeterias," represents an attempt by DOE to "bootstrap itself into an area in which it has no jurisdiction." *Adams Fruit, supra*, 494 U.S. at 650.

9.      In its opinion in *NISH v. Cohen*, the Fourth Circuit did not conduct a *Chevron* step-one analysis of DOE's jurisdiction in the area of defense procurement. Rather, in holding that the word "*cafeterias*" in Randolph-Sheppard includes military mess halls, that Court confined its analysis to step two. The Court stated: "When a statute, in this instance, the RS Act, 'is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" 247 F.3d at 202. (citation omitted.) This statement assumes a proper step-one finding of an express statutory grant of authority. Here, however, the "specific issue" on which Randolph-Sheppard is "silent" is any express Congressional delegation of authority to DOE to regulate military

---

[4] A vending concession "does not constitute a procurement, but is a grant of a permit to operate a business and the government is not committing to pay out government funds or incur any monetary liability." *YRT Services Corp. v. United States*, 28 Fed. Cl. 366, 371, 392, n. 23 (1993). Concession contracts "are not Federal procurement contracts or permits within the meaning of statutory or regulatory requirements applicable to Federal procurement actions." 36 C.F.R. § 51.1.

procurement contracts in addition to vending concession contracts. Because Randolph-Sheppard is silent on that fundamental issue, no such authority exists.

10.    In determining whether to accord deference to agency decisions, the Supreme Court's decisions call for examination of the following factors: (a) the statutory language, (b) the legislative and historical context, (c) comparison to other acts, and (d) whether a "common sense" analysis makes it likely that Congress would delegate a policy decision of such economic and political magnitude in the manner involved. *Whitman v. American Trucking Associations, Inc.*, 531 U.S. 457 (2001); *Food and Drug Administration v. Brown & Williamson Tobacco Corporation,* 529 U.S. 120 (2000); *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.,* 512 U.S. 218 (1994).

### The Statutory Language

11.    As to the first factor, the words of the 1974 Randolph-Sheppard Amendments do not support DOE's claim that Congress broadened its authority to encompass regulation of military procurement. The entire basis of DOE's assertion rests on the word "cafeteria." That word, however, is found only twice in Randolph-Sheppard: (1) in the Definitions section, as a type of "vending facility," and (2) in the subsection authorizing regulation of "cafeterias." 20 U.S.C. §§ 107e(7) and 107d-3.

12.    The subsection authorizing regulation of "cafeterias" was "imposed" to address employee union concerns "that a blind cafeteria operator in a monopoly situation could, without some legal restraint, charge what the market could bear, and provide unsatisfactory food service." S.Rep. No. 93-937 at 24 (Complaint, Exhibit 1). Accordingly, the Act charges the Secretary to "prescribe regulations to establish a priority for the operation of cafeterias on Federal property by blind licensees" upon determining on an individual basis that the "blind

licensee" can operate the cafeteria "with food of a high quality comparable to that currently provided to employees .... " As further confirmation that this provision did not add new authority to regulate procurement contracts, Congress placed it with several other matters under "Vending machine income." 20 U.S.C. § 107d-3.

13. The reference to "blind licensees" strengthens the limitation of "cafeterias" to vending concessions, as does the Congressional requirement for "food of a high quality and comparable costs." That requirement has no relevance to mess halls, where military food specialists typically plan the menus and buy the food, paying the contractor to prepare and serve the food to military personnel. Chamberlin Decln. ¶ 13.

14. The Act's limitation to vending concessions is reinforced in its requirement for the Secretary of Education to "make annual surveys of *concession vending opportunities* for blind persons on Federal and other property ...." 20 U.S.C. § 107a(a)(2). (Emphasis added.)

15. The government's argument, based on the similarity of mess halls to "cafeterias," begs the fundamental question of the specific authority delegated by Congress to DOE in Randolph-Sheppard. That authority only concerns priority to blind vendors to operate vending concessions making private sales to individuals. Aware of the lack of an express textual commitment in Randolph-Sheppard, the government acknowledges "RSA does not attempt to regulate military procurement as such ...." Defendants' Response to Plaintiffs' Motion for Summary Judgment ("Defendants' Response") at 40.

16. Defendants nevertheless assert that Randolph-Sheppard must apply to military procurement because Congress made no distinction between concession cafeterias and military mess halls. Congress, Defendants observe, required that income from vending machines be shared with the Randolph-Sheppard vendor, but exempted vending machines within military

exchanges and ships' stores. 20 U.S.C. § 107d-3(d). This provision has nothing to do with mess hall procurement contracts. Yet, defendants urge that since Congress made no similar distinction between mess halls and concession cafeterias, it follows that mess hall contracts must be covered. There was no occasion, however, for Congress to exclude mess hall contracts. They were not covered in the first place. In addition, an express delegation of authority cannot be found in the failure of Congress to exclude it. Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide elephants in mouseholes." *American Trucking*, 121 S.Ct. at 910 (citations omitted).

17. This Court disagrees with the Fourth Circuit's conclusion that DOE properly construed "cafeterias" to include military mess halls because Congress defined "vending facilities" to include "cafeterias." 247 F.3d at 204, n. 6. This circular reasoning begs the question whether DOE's authority to regulate "vending facilities" extends to defense procurement contracts. A mess hall cannot be deemed a "vending facility" on the basis that it resembles a cafeteria.

18. In short, there is no indication in Randolph-Sheppard that the term "vending facilities" authorizes DOE to regulate the award of defense procurement contracts. In any case, mess halls are not vending facilities. It is uncontested that the purpose of mess halls is to feed troops, and they are not open to the public for the purchase of meals.

19. Nor does Randolph-Sheppard contain the necessary "procurement procedures ... expressly authorized by statute" to qualify for an exception to the open competition requirements of CICA. 10 U.S.C. § 2304(a)(1). The CICA exception can only be triggered by "another federal procurement statute." *Corel Corporation v. United States*, Civil Action No. 99-3348 at 11 (D.D.C. Sept. 17, 2001), 2001 WL 1241987. Randolph-Sheppard is not a procurement statute.

Defendants point to the statutory definition of "procurement" as "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 10 U.S.C. § 2302(3)(A)(adopting the definition of "procurement" in the Office of Federal Procurement Policy Act, 41 U.S.C. § 403). Defendants' Response at 31.

20. Defendants are incorrect for two reasons. First, the grant of permission to operate a vending concession on federal property is not part of the government's "process of acquiring property or services." Vendors make sales to individuals, not to the government. Second, the definition of "procurement" is in the same statute that gives the force and effect of law to the Federal Acquisition Regulation as "the single Government-wide procurement regulation." 41 U.S.C. § 405(a). That regulation, which says nothing about concession contracts, defines procurement contracts as those "that obligate the Government to an expenditure of appropriated funds" and defines "acquisition" as "the acquiring by contract with appropriated funds of supplies or services ...." 48 C.F.R. § 2.101 These definitions explain why concession contracts are omitted from the FAR. Vending concessions, in contrast to procurement contracts, do not involve government acquisition of supplies or services with appropriated funds.

21. In summary, DOE's "cafeteria" regulations, which govern only vending concessions, are not procurement regulations. They are not part of the Federal Acquisition Regulation, which by statute is the "single Government-wide procurement regulation." 41 U.S.C. § 405(a). To the contrary, the "cafeteria" regulations, in giving priority to the blind vendor if the State Licensing Agency's proposal is within the "competitive range," are inconsistent with the Federal Acquisition Regulation. See 48 C.F.R. § 15.306(c) and (d). That

regulation -- which in 1,787 pages covers every aspect of procurement -- says nothing about concession contracts.

22.    Randolph-Sheppard only grants DOE authority to regulate "vending facilities," and therefore imposes the blind vendor priority only on "cafeterias" that are vending facilities. Mess halls are not "vending facilities," and Randolph-Sheppard does not authorize the extension of the blind vendor priority to defense procurement contracts.

## The Legislative and Historical Context

23.    Next, the Supreme Court looks to the legislative and historical context of the statutory language, including its legislative history. *See American Trucking*, 121 S.Ct. at 911; *Brown & Williamson*, 529 U.S. at 143-59.

24.    Defendants make no assertion that Randolph-Sheppard contained any procurement regulatory authority from its enactment in the 1930s until its amendment in 1974 to include "cafeterias" as a type of "vending facility."   For the following reasons, the Court concludes that Congress did not, in such a veiled manner, extend the blind vendor priority into government procurement:

a.    Defendants' position is contradicted by contemporaneous assurances of legislative sponsors and advocates in the blind vendor community, in urging passage of the 1974 amendments, that the amendments (i) involved only "self-sustaining" vending concessions, (ii) contained "no new expression of congressional intent," (iii) involved "no procurement by the Federal Government," and (iv) required "appropriated dollars only for administrative costs." Plaintiffs' Reply at 11, n. 3. Thus, the beneficiaries of the 1974 amendments -- those who stood to gain the most -- assured Congress at the time of passage that the bill meant the opposite of what defendants now assert.

b.      DOE in its public rulemaking on the "cafeteria" amendments, made no claim that the proposed regulations applied to military mess halls.

c.      Nor did Randolph-Sheppard advocates make such an assertion during 1985 Senate hearings that addressed complaints about lack of federal agency compliance with Randolph-Sheppard, even though agencies by that time had been contracting for food service in mess halls at least twenty-five years.  Randolph-Sheppard advocates did not assert the application of the blind vendor priority to mess hall contracts until 1991, seventeen years after passage of the 1974 Amendments.

d.      In an August 14, 1997 memorandum heavily relied on by the government, Frederick K. Schroeder, Commissioner, Rehabilitation Services Administration, DOE, admitted that the Randolph-Sheppard grant of authority to regulate cafeterias "appears to address *only cafeterias run on a concession basis by blind vendors*." (Emphasis added.)  Complaint, Exhibit 21.  While Commissioner Schroeder resisted the conclusion "that only these [concession] types of cafeterias are covered by the Act," the "cafeteria" regulations implement the very authority Commissioner Schroeder *rejected* as the basis for regulating military procurement.   Although Commissioner Schroeder urged "the Act clearly covers all types of cafeterias," the Act's only other reference to "cafeterias" is in the definition of "vending facility."  20 U.S.C. § 107e(7).  The "cafeteria" regulations can have no further reach than the statute itself.

25.      DOE's position is reflected only in agency memoranda that are not part of the formal rulemaking process, and are therefore not entitled to deference. *United States v. Mead*, 121 S.Ct. 2164, 2171 (2001)("interpretations contained in policy statements, agency manuals, and enforcement guidelines ... are beyond the *Chevron* pale").

## Comparison to Other Acts

26.     Next, the Supreme Court inquires whether the meaning of the statute is affected

by other Acts. *Brown & Williamson*, 529 U.S. at 133. When Congress creates a statutory

procurement priority, it uses explicit language, making clear the priority applies to procurement

contracts to furnish goods and services to the government. *See, e.g.,* 15 U.S.C. § 637(a)(1)(A),

(B) (Small Business Act); 41 U.S.C. § 48 (JWOD Act). Unlike Randolph-Shepard, JWOD

provides a procurement priority, specifically exempt from open competition requirements. See

10 U.S.C. § 2304(c)(5); 2304(f)(2)(D).

27.     Congress first enacted JWOD in 1938 as a procurement priority statute with

mandatory purchase requirements. 52 Stat. 1196 (1938). In 1971, Congress amended JWOD,

creating the Committee to maintain a Procurement List, mandatory for agency use. 41 U.S.C. §§

47(a)(1) and 48. Thus, both JWOD and Randolph-Sheppard were enacted in the 1930s, JWOD

as a procurement priority statute and Randolph-Sheppard as a vending concession statute. In

1971, Congress confirmed and strengthened JWOD's procurement priority and mandatory

purchase features. Three years later, in 1974, Congress amended Randolph-Sheppard and

confirmed *its* exclusive application to concession vending. Randolph-Sheppard is comparable

to other statutes that involve concession contracts. *See, e.g.,* 16 U.S.C. § 5952 ("Award of

Concessions Contracts").

## Common Sense Analysis

28.     Finally, under the Supreme Court's "common sense" analysis, it is unlikely that

Congress would delegate a policy decision of such economic and political magnitude in the

manner advanced by the government. *Food and Drug Administration v. Brown & Williamson*

*Tobacco Corporation*, 529 U.S. 120, 133 (2000)("we must be guided to a degree by common

sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency"). Plaintiffs' Reply at 35.

29.     The government's position, if accepted, would result in millions of tax dollars being turned over to a State Licensing Agency and a single blind vendor "teamed" with a non-disadvantaged "consultant" company, all exempted from competitive bidding statutes, but with no obligation to hire other persons with disabilities. Chamberlin Decln. ¶ 14.     Although the Randolph-Sheppard priority is supposed to go to a blind vendor, the Air Force has candidly recognized Selrico Services, Inc. as the main party in interest. Declaration of Edward Henry Castillo, Defendants' Response, Exhibit A, ¶¶ 15-17, Doc. 15.

30.     In fact, Selrico Services is the "consultant" company that stands to benefit the most from this noncompetitive award, but has no obligation under Randolph-Sheppard to hire a *single person with disabilities*. Chamberlin Decln. ¶¶ 14, 15. Selrico Services is a substantial company with a number of multimillion dollar food service contracts around the country. Plaintiffs' Reply, Exhibit 24. Had defendants prevailed, Selrico Services would have performed the work under the contract and paid a fee to the blind vendor Robert Vick, whose presence secured the noncompetitive contract for Selrico. Plaintiffs' Reply at 5; Chamberlin Decln. ¶¶ 14, 15.

31.     The Court concludes it is unlikely that Congress would delegate to DOE the power to force Community Rehabilitation Programs, and thousands of persons with severe disabilities, to lose contracts, jobs and training opportunities, merely by inserting the word "cafeterias" in the definition of "vending facilities," in a statute that deals only with vending concessions.

## Conclusion

The Court declines to follow the Fourth Circuit's opinion in *NISH v. Cohen*, 247 F.3d 197 (2001). That decision (a) did not apply the Supreme Court's *Chevron* step-one examination of fundamental delegation of statutory authority, (b) did not consider the analytical framework imposed by the Supreme Court's decisions in *Brown & Williamson* and *American Trucking* and (c) was decided before the Supreme Court handed down its *Mead* decision, which held that agency memoranda, such as Commissioner Schroeder's 1997 memorandum, are not entitled to deference. In any case, *NISH v. Cohen*, unlike the present case, did not involve an attempt to oust an incumbent JWOD contractor.

Randolph-Sheppard (a) applies only to vending facility concessions and is not applicable to military procurement contracts for operation of mess halls, (b) confers no authority on DOE to regulate military procurement by applying the "blind vendor" priority to contracts for mess hall services, and (c) does not constitute an exception to statutory competition requirements.

Defendants are precluded from continuing with the Air Force's award of a contract for food services at Kirtland AFB under the purported authority of the Randolph-Sheppard Act. Defendants must honor the mandatory requirement to obtain mess hall services at Kirtland AFB from the Procurement List.

Plaintiffs are entitled to costs.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

*John J. Kelly for D.G.S.*

Douglas G. Schneebeck
Post Office Box 2168
Bank of America Centre, Suite 1000
500 Fourth Street, N.W.
Albuquerque, New Mexico 87103-2168
(505) 848-1869

SMITH, PACHTER, McWHORTER & ALLEN, P.L.C.
John S. Pachter
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
(703) 847-6300

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of January, 2002, a true copy of Plaintiffs' Proposed Findings of Fact and Conclusions of Law was hand-delivered to:

David C. Iglesias, United States Attorney
Jan Elizabeth Mitchell, Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

John D. Cline
Freedman Boyd Daniels Hollander Goldberg & Cline
20 First Plaza, Suite 700
Albuquerque, NM 87102

and faxed to:

Andrew D. Freeman
Brown, Goldstein and Levy
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202

Patrick D. Allen, Esq.
Yenson, Lynn, Allen & Wosick, PC
PO Box 26447
Albuquerque, NM 87125-6447

_(signature)_

Douglas G. Schneebeck
MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

John S. Pachter
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.

ATTORNEYS FOR PLAINTIFFS

K:\dox\client\56849\112\W0210284.DOC