# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

NISH and RCI, Inc.,

      Plaintiffs,

v.                                      CIV 01-1075 WJ/WWD  ACE

THE HONORABLE DONALD H. RUMSFELD,
Secretary of Defense and THE HONORABLE
JAMES G. ROCHE,  Secretary of the Air Force,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment (Docket No. 7), Intervenors' Motion to Dismiss or, in the Alternative, Cross-Motion for Summary Judgment (Docket No. 13), and Defendants' Cross Motion for Summary Judgment (Docket No. 15). Also pending before the Court is Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary Injunction (Docket No. 21).

## I.    PROCEDURAL HISTORY

Plaintiffs are organizations that have held contracts since 1990 to provide mess hall services at Kirtland Air Force Base ("Kirtland"), New Mexico, under the Javits-Wagner-O'Day Act ("JWOD"), 41 U.S.C. §§ 46-48c.  Intervenor New Mexico Commission for the Blind (NMCB) is an agency of the State of New Mexico that recently acquired the contract to provide mess hall services at Kirtland pursuant to the Randolph-Sheppard Act ("RSA"), 20 U.S.C. §§ 107 et seq.  Intervenor Robert Vick is the person selected by the NMCB to provide full food services at Kirtland in accordance with the RSA.  The Honorable Donald H. Rumsfeld, Secretary of Defense, and the

Honorable James G. Roche, Secretary of the Air Force ("Defendants") are the officials responsible for awarding the Kirtland mess hall contract under the RSA rather than under the JWOD. Plaintiffs argue that the JWOD applies to the award of a contract to operate a mess hall on a military base and that the RSA does not apply to military mess halls. Defendants and Intervenors argue that, while both statutes apply to the award of contracts to operate mess halls on military bases, the RSA and not the JWOD governs the award of the Kirtland mess hall contract.

Plaintiffs filed an application for a temporary restraining order and preliminary injunction. By separate motion, Plaintiffs also seek summary judgment on the Complaint for Injunctive Relief and Declaratory Judgment and ask this Court to declare that the RSA (1) applies only to vending concessions, (2) does not apply to military procurement contracts for the operation of mess halls, (3) gives no authority to the United States Department of Education ("DOE")[1] to regulate military procurement by applying the RSA to mess hall contracts and (4) does not create an exception to the competitive bid requirements for procurement. Conversely, Defendants and Intervenors seek summary judgment on the basis that the RSA does apply to the award of the Kirtland contract for mess hall services. Subject matter jurisdiction of the Court over the controversy in this case was properly invoked pursuant to the Administrative Procedures Act, 5 U.S.C. § 702.

## II.     FACTUAL BACKGROUND

The Competition in Contracting Act ("CICA") requires that the armed forces, including the Department of Defense ("DOD") and the Department of the Air Force, procure goods and services through a full and open competitive process unless a noncompetitive procedure is authorized by

---

[1] The RSA directs the Secretary of DOE to prescribe regulations to ensure that sufficient priority is given to licensed blind persons and that where feasible, one or more vending facilities are established on all federal property. See 20 U.S.C.A. §107(b).

statute. 10 U.S.C. §§ 2302, 2304(a)(1). The provision allowing for a noncompetitive process when authorized by statute is referred to by the parties as the CICA "savings clause."

The JWOD, originally passed in 1938,[2] established an independent federal agency known as the Committee for Purchase From People Who Are Blind and Severely Disabled (the "Committee"). 41 U.S.C. § 46. The Committee is responsible for identifying products and services suitable for federal procurement that can be provided by disabled persons through qualified nonprofit agencies. 41 U.S.C. § 47. The Committee is also charged with designating a central nonprofit agency to facilitate the distribution of commodities and services on the procurement list. 41 U.S.C. § 47(c). When the federal government purchases services or commodities that have been placed on the procurement list, those services or commodities must be purchased from the local qualified nonprofit agency. 41 U.S.C. § 48; 48 C.F.R. § 8.001(a)(2); 48 C.F.R. § 8.7. Plaintiff NISH is the designated central nonprofit agency selected by the Committee under the JWOD to facilitate the procurement of services from local nonprofit agencies. Plaintiff RCI, Inc. ("RCI") is the local nonprofit agency that is the mandatory sole source of the Kirland Air Force Base mess hall services under the JWOD. The parties in this case concede that the JWOD is a procurement statute that creates an exception to the competitive bidding requirements of CICA in accordance with the CICA savings clause. See 10 U.S.C. § 2304(a)(1).

The RSA was originally passed in 1936.[3] It requires that a preference be given to blind persons licensed by a state agency when a federal government agency authorizes the operation of a vending facility on federal property. 20 U.S.C. § 107. Intervenor NMCB is the state licensing

---

[2]Amended in 1971, 1974, 1976, 1992 and 1993.

[3]Amended in 1954 and 1974.

agency for New Mexico under the RSA. As previously noted, the RSA charges the DOE with implementation of the RSA. In 1974, Congress amended the RSA, and the term "vending stand" was changed to "vending facility" with the definition of vending facility including cafeterias. 20 U.S.C. § 107e(7). Thus, the RSA specifically applies to the operation of vending facilities, including cafeterias, on DOD property. 20 U.S.C. § 107e(3).

The DOE regulations promulgated pursuant to the RSA define a cafeteria as a "food dispensing facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections. A cafeteria may be fully automatic or some limited waiter or waitress service may be available . . . and table or booth seating facilities are always provided." 34 C.F.R. § 395.1(d). The parties do not seriously dispute whether a military mess hall can be described by the same language that defines "cafeteria" in the DOE regulations. The parties do, however, dispute whether a military mess hall is technically a "cafeteria" for purposes of the RSA. Ultimately, then, the dispute in this case centers on whether the RSA is a procurement statute that provides an exception to the competitive bidding requirements of CICA in accordance with the savings clause found in 10 U.S.C. § 2304(a)(1).

The Committee placed the mess hall services at Kirtland on the procurement list under the JWOD for several years. From 1990 until October 2000, the full food service at Kirtland was provided by government employees, and the procurement listed service provided by RCI under the JWOD was for "mess hall attendant services." In October 2000, Kirtland contracted for full food service and in February 2001, the Committee placed full food service for Kirtland on the procurement list. NMCB contacted the Kirtland contracting officer in 2000 and expressed an interest in providing

full food services at Kirtland under the RSA. Notwithstanding NMCB's expressed interest, and for reasons not germane to this case, RCI was awarded a one year contract under the JWOD to provide the full food services at Kirtland. In 2001, however, NMCB responded to a solicitation for full food services at Kirtland and was awarded the contract for those services.[4]

All parties appear to concede that if the RSA does not apply to contracts for military mess hall services, then the JWOD would require Kirtland to contract with RCI for full food services at the mess hall. Defendants and Intervenors contend that the RSA does apply to military mess halls. Additionally, they argue that when a state licensing agency exercises its priority under the RSA, the RSA supercedes the JWOD and the contract must be awarded under the RSA. Conversely, Plaintiffs argue that the RSA does not apply to military mess halls and Kirtland is required under the JWOD to contract with Plaintiff RCI as the mandatory sole source for full food services at Kirtland.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999). When the parties to an action file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties. Atlantic Richfield Co. v Farm Credit Bank of Wichita, 226 F.3d 1138 (10th Cir. 2000). Summary judgment is not appropriate if disputes remain as to material facts. Id.   When the facts underlying

---

[4] RCI's contract was scheduled to expire on January 31, 2002. This Court orally ruled on the motion and cross motions for summary judgment on January 30, 2002, prior to the scheduled expiration.

the case are not in dispute, questions of law are properly decided by way of summary judgment. NISH v. Cohen, 247 F.3d 197, 201 (4th Cir. 2001).

The parties in this case have not conceded that there are no disputed issues of fact and the parties disagree regarding several of the finer points of the others' versions of the facts. None of these minor disparities, however, has any effect on the outcome of this case. Thus, there are no disputed issues of material fact and this case is properly decided by way of summary judgment.

## IV. DISCUSSION

### A. Review of Agency Determinations Under the Administrative Procedures Act.

In ruling on each party's motion for summary judgment, the Court is aware that its jurisdiction is invoked pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 702. When reviewing agency action under the APA, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the agency given the responsibility and authority to administer and give effect to a statute. Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 846 (1984). Under Chevron, when a statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's interpretation is based on a permissible construction of the statute. Id. This so called Chevron deference may be due even when administrative action is not in the form of formal notice and comment rulemaking. United States v. Mead, 121 S.Ct. 2164, 2173 (2001).

Even when an administering agency's actions or interpretations are not due full Chevron deference, they may be due some deference. Mead, 121 S.Ct. at 2171, 2172. According to Mead, the deference due an agency's non-formal interpretation of a statute varies with the circumstances depending on the degree of the agency's care in making the interpretation, its consistency, the level

of formality, the relative expertness, and the persuasiveness of the agency's position. Id. In Mead, the Supreme Court indicated that interpretations of a statute contained in the implementing agency's policy statements, agency manuals, and enforcement guidelines are examples of interpretations that may be due some deference even if they are not entitled to full Chevron deference.

Under the APA, Plaintiffs challenge the actions of Defendants in awarding the contract for full food services at Kirtland under the RSA rather than under the JWOD. Defendants' interpretation of the RSA as applying to contracts for mess hall services, standing alone, is entitled to no particular deference because Defendants are not charged by Congress with the responsibility or authority to interpret and implement the RSA. Defendants, however, relied on actions of the DOE with regard to the RSA in reaching their determination that the RSA applied to military mess hall contracts. To the extent that the Defendants' decision relied on DOE interpretations of the RSA, that decision is entitled to the same level of deference due those DOE determinations.

There are two actions taken by the DOE regarding the RSA that justify Defendants' decision to award the Kirtland mess hall contract under the RSA. First, the DOE promulgated regulations that defined cafeteria to include the essential functions of a military mess hall. 34 C.F.R. § 395.1(d). Second, on August 14, 1997, the DOE Commissioner of the Rehabilitative Services Administration, Frederick K. Schroeder, wrote a memorandum to the Committee[5] (hereinafter "Schroeder Memorandum") that stated, with extensive analysis, that the RSA applies to military mess halls. See Exhibit 10 to Plaintiffs' Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order, Motion for Preliminary Injunction and Permanent Injunction and Declaratory Judgment (hereinafter "Plaintiffs' Memorandum of Points and Authorities").

---

[5]The JWOD implementing agency under 41 U.S.C. § 46.

The definition of "cafeteria" found in the DOE regulations is due full <u>Chevron</u> deference. The RSA compels the DOE, through the Commissioner of the Rehabilitative Services Administration, to promulgate regulations giving effect to the priorities of the RSA. 20 U.S.C. § 107(b). Thus, the DOE regulations pertaining to the RSA have the force of law and must be given deference by this Court provided that they are based on a reasonable construction of the statute. I find that the definition of "cafeteria" found in the DOE regulations is based on a reasonable construction of the RSA. <u>See also</u> <u>NISH</u>, 247 F.3d at 202.

The RSA, under its clear terms, evidences the intent of Congress that the DOE's Commissioner of the Rehabilitative Services Administration shall have the authority to interpret the RSA and promulgate regulations to assure that the purposes of the statute are realized. 20 U.S.C. §§ 107(b), 107e(2). Accordingly, this Court must accord <u>Chevron</u> deference to the Schroeder Memorandum and accept the Commissioner's interpretation of the RSA provided that such interpretation is reasonable. I find that the DOE's interpretation that the RSA applies to military contracts for the procurement of full food services in mess halls is reasonable.

B.    <u>Reasonableness of the Commissioner's Interpretation of the Randolph-Sheppard Act.</u>

Plaintiffs argue that the RSA cannot be reasonably interpreted to apply to military mess halls because vending as envisioned by the RSA is limited to an entirely private transaction and, in obtaining full food services for mess halls, the DOD is expending appropriated funds. In contrast to typical vending concessions where meals are purchased by the general public with private funds, Plaintiffs point out that food services at military mess halls are provided to military personnel from appropriated funds as part of the military mission. Thus, Plaintiffs conclude that the RSA, which involves typical vending concessions, cannot be intended to cover situations such as the Kirtland mess

8

hall because the RSA does not involve a typical vending concession. Basically, Plaintiffs' position is that providing a vending opportunity and procuring full food services are mutually exclusive activities; when the federal government is providing a vending opportunity, it is not procuring goods or services. According to Plaintiffs, the RSA then does not authorize procurement and the federal government cannot procure mess hall services under the RSA.

The definition section of CICA, 10 U.S.C. § 2302, defines procurement by cross-referencing the definition of procurement found in 41 U.S.C. § 403. Procurement is there defined as "all stages of the process of acquiring property or services beginning with the process for determining a need for property or services and ending with contract completion and close-out." 41 U.S.C. § 403.[6] As the Fourth Circuit noted, "[t]he provisions of the RSA clearly fit the sweeping definition of procurement." NISH, 247 F.3d at 204.

I find the definition of procurement for purposes of CICA and the reasoning of the Fourth Circuit on this point compelling.[7] When the federal government determines that there is a need for

_____

[6]Congress added this cross-referenced definition to CICA at 10 U.S.C. § 2302 in 1994. Two years prior, the Fifth Circuit addressed the definition of procurement for purposes of 41 U.S.C. § 253, the civilian counterpart to the military CICA. Rapides Reg'l Med. Ctr. v Secretary, Dep't. of Veterans' Affairs, 974 F.2d 565 (5th Cir. 1992). That court found that the broad definition of procurement found at 41 U.S.C. § 403 did not apply to the civilian CICA stating that, "[H]ad Congress wanted the definition of procurement articulated in [41 U.S.C. § 403] to apply to [the civilian CICA], it could have done so in express terms." Rapides, 974 F.2d at 573. The court reasoned that the definition of procurement in 41 U.S.C. § 403 was considerably broader than procurement should be defined for purposes of the particularized bidding requirements in CICA. Id. In contrast to Rapides, Congress did expressly adopt the broad definition of procurement for purposes of the requirements of the military version of CICA.

[7]The Fourth Circuit, in a case with virtually identical facts to this case, affirmed the decision of the United States District Court for the Eastern District of Virginia that the RSA governed the award of the contract for mess hall services at the Department of the Army's Fort Lee. NISH v. Cohen, 247 F.3d 197 (4th Cir. 2001) (affirming 95 F. Supp.2d 497 (E.D. Va. 2000)).

services for its employees or the public and thus contracts with a vendor to come onto federal property, the federal government has engaged in "procurement" as defined in CICA whether or not it has used appropriated funds to acquire those services. Therefore, the RSA is reasonably interpreted as a statute authorizing procurement and falls within the "savings clause" of the CICA.

In addition to the Fourth Circuit's holding in <u>NISH</u>, the Federal Circuit appears to have assumed that the RSA applies to military procurement contracts for Air Force cafeterias in <u>Southfork Sys., Inc., v. The United States</u>, 141 F.3d 1124 (Fed. Cir. 1998). The Comptroller of the United States has also determined that the RSA applies to government procurement contracts for food services. <u>See</u> Dep't of the Air Force -- Reconsideration, 72 Comp. Gen. 241, 93-1 CPD ¶ 431 (June 4, 1993). All these determinations are in addition to the determination by the DOE Commissioner for the Rehabilitative Services Administration, a determination by the DOD General Counsel, and a determination by the Department of the Air Force, 377th Contracting Squadron, Kirtland Air Force Base.[8] <u>See</u> Schroeder Memorandum; Exhibit 12 to Plaintiffs' Memorandum of Points and Authorities (Memorandum from Judith A. Miller, Department of Defense General Counsel for General Counsels of the Military Departments (Nov. 12, 1998)); Exhibit 15 to Plaintiffs' Memorandum of Points and Authorities (Memorandum from Edward H. Castillo, Contracting Officer Kirtland AFB, for RCI (May 11, 2001)).

There is no need to resort to legislative history in this case to determine whether the DOE interpretation of the RSA is reasonable given the plain language of CICA and the definition of

_____

[8]Also interesting is an opinion from the United States District Court, Western District of Oklahoma. <u>Oklahoma v. United States</u>, CIV-96-1734-A (W.D. Okla. January 7, 1998). Parties in that case conceded that the RSA applied to the procurement contract, so the issue of the RSA's applicability was not squarely before the court.

"procurement" that applies to military procurement contracts.  See United States v. Gonzales, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").  However, even the legislative history of the RSA indicates that it is reasonable to interpret the RSA as applying to contracts for military mess halls.  The legislative history clearly shows that one of the main concerns Congress was attempting to address by adopting the 1974 amendments was the failure of many federal agencies to comply with the RSA.  See Exhibit 1 to Plaintiffs' Memorandum of Points and Authorities (S. Rep. No. 93-937, 93d Cong. 2d Sess. 10-13, 17 (1974)).  DOD installations were specifically targeted in several discussions regarding compliance with the RSA and methods of obtaining better compliance.  See Id.; Exhibit 3 to Plaintiffs' Memorandum of Points and Authorities (Randolph-Sheppard Act for the Blind Amendments of 1973: Hearings on S.2581 Before the Subcommittee on the Handicapped of the Comm. on Labor and Public Welfare, 93d Cong. 31-32 (1973) (Testimony from Mr. Ahart, Director of the Manpower and Welfare Division of the General Accounting Office)); Exhibit D to Defendants' Response to Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment (Randolph-Sheppard Act for the Blind Amendments of 1973:  Hearings on S.2581 Before the Subcommittee on the Handicapped of the Comm. on Labor and Public Welfare, 93d Cong. 98-103 (1973) (Testimony of General Leo E. Benade, Assistant Secretary for Military Personnel Policy, Department of Defense)).  Therefore, the DOE's conclusion that the RSA applies to contracts for military mess hall services is reasonable and this Court must defer to the DOE's decision.

Plaintiffs argue that the DOE interpretation is due no deference because the RSA simply does not give the DOE any authority to regulate procurement contracts.  According to Chevron, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative

constructions which are contrary to clear congressional intent." 467 U.S. 837, 843 n. 9.  If the intent

of Congress is clear, there is no further need for analysis.  Id. at 842.  However, if the statute is silent

or ambiguous with respect to the issue, the Court must afford deference to the agency's

interpretation.  Id. at 843.  I find that the RSA is silent on the issue of whether the RSA applies to

military mess hall contracts.  Thus, the DOE interpretation of the RSA as applying to contracts for

military mess halls in not contrary to clear congressional intent and the DOE is not acting outside the

scope of its authority when it gives the RSA this interpretation.

     C.     <u>Resolving the Conflict Between the Randolph-Sheppard Act and the Javits-Wagner-O'Day Act.</u>

Given the finding that the RSA applies to military contracts for mess hall services, there is still

an issue regarding the apparent conflict between the RSA and the JWOD.  The parties concede that

the JWOD applies to such contracts.  Defendants and Intervenors argue that the two statutes are not

in conflict.  First, they point out that the RSA only gives a bidding priority to a state licensing agency

such as NMCB for the operation of "cafeterias."  See 20 U.S.C. § 107d-3(e); 34 C.F.R. §395.33.

The state licensing agency must meet the bidding requirements of a solicitation, and will only receive

a contract when those requirements are met.  Id.  Defendants and Intervenors note that if the state

licensing agency fails to meet the bidding requirements, then the contract would be awarded under

the JWOD.  Additionally, the Intervenors and Defendants urge that there is no conflict because the

licensed vendor under the RSA may hire persons who would receive employment through the JWOD,

thus eliminating any conflict.

I agree with Plaintiffs that when a military mess hall service is listed by the Committee such

that the JWOD applies to procurement of those services, and a state licensing agency seeks the

contract for those same services under the RSA, a conflict exists between the RSA and the JWOD. The fact that the JWOD will be given effect when a state licensing agency fails to submit an appropriate bid under RSA does not eliminate the conflict that arises when a state licensing agency successfully obtains a contract under the RSA that would otherwise be awarded under the JWOD. The JWOD itself is mandatory and cannot be subordinated to a statute such as the RSA without addressing the issue of a conflict.  See 41 U.S.C. § 48.  Similarly, the fact that a vendor under the RSA may choose to hire persons who would have received employment under the JWOD does not eliminate the conflict.  Those employees do not receive the guarantees and protections afforded under the JWOD when they are hired by someone who receives a contract under the RSA.  There is nothing in the RSA that requires a vendor to provide employment opportunities to persons with disabilities.  Therefore, to the extent that a contract for mess hall services is on the procurement list for purposes of the JWOD and is also subject to the RSA, a conflict between the statutory schemes arises.

There is no deference due any agency determination with regard to the conflict between the RSA and the JWOD.  Plaintiffs point to a letter from the Committee to the Kirtland contracting officer stating that the Committee has not removed the military mess hall services from the procurement list, that it has no intention of doing so in the future and that Kirtland must obtain its services from the designated JWOD nonprofit agency.  Exhibit 17 to Plaintiffs' Memorandum of Points and Authorities (letter from Leon A. Wilson, Executive Director, Committee for Purchase From People Who Are Blind or Severely Disabled, to Maj. Richard Authier, 377th Contracting Squadron, Kirtland AFB (Aug. 10, 2001)).  Conversely, as noted above, there is the Schroeder Memorandum from the DOE Commissioner of the Rehabilitative Services Administration to the Committee insisting that the RSA applies to military mess hall contracts.  Thus, the agencies charged

with implementing each of the statutes have reached conflicting interpretations and neither is entitled to have its interpretation given greater weight. The attempt by the DOD to resolve the conflict is also due no special deference by this Court.

In resolving the conflict between the JWOD and the RSA, I find the Fourth Circuit's reasoning on this issue persuasive. In <u>NISH</u>, the Fourth Circuit noted that the JWOD is a general procurement statute that covers all types of commodities and services. 247 F.3d at 205. In contrast, the RSA specifically applies to the operation of cafeterias. <u>Id.</u> "It is a fundamental tenet of statutory construction that a court should not construe a general statute to eviscerate a statute of specific effect." <u>Sierra Club - Black Hills Group v. United States Forest Service</u>, 259 F.3d 1281, 1287 (10th Cir. 2001). Because the JWOD is a general statute and the RSA is a statute of specific effect, I find that when the two are in conflict, the RSA controls and supercedes the JWOD.

## V.    CONCLUSION

When I announced my decision in open court on January 30, 2002, I stated that I probably would have decided the case differently if I were to decide it on the basis of the apparent fairness of the outcome. However, ". . . it is the duty of the courts to enforce the judgment of the legislature, however much [they] might question its wisdom or fairness. . . . If the effects of the law are to be alleviated, that is within the province of the Legislature." <u>Estate of Cowart v Nicklos Drilling Co.</u>, 505 U.S. 469, 484 (1992).

THEREFORE, for the reasons stated above;

IT IS ORDERED that Defendants' and Intervenors' Cross Motions for Summary Judgment (Docket Nos. 13 and 15) are GRANTED;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 7) is DENIED;

IT IS FINALLY ORDERED that Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary Injunction (Docket No. 21) is DENIED as being moot.

_____
UNITED STATES DISTRICT JUDGE